**Fill in this information to identify your case:**

Debtor 1    Nicole      Anne      Briggs
        First Name      Middle Name      Last Name

Debtor 2
(Spouse, if filing)   First Name      Middle Name      Last Name

United States Bankruptcy Court for the: Southern District of Mississippi

Case number   25-03231
(if known)

Official Form 427

# Cover Sheet for Reaffirmation Agreement

12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

## Part 1:   Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?**

Trustmark Bank
Name of the creditor

**2. How much is the debt?**

On the date that the bankruptcy case is filed   $    59,818.02    Principal Balance

To be paid under the reaffirmation agreement   $    59,818.02    Principal Balance

$ 897.99 per month for 184   months (if fixed interest rate)
Payment amount subject to change with notice of escrow or Arm Loan

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**

Before the bankruptcy case was filed    4.750 %

Under the reaffirmation agreement    4.750 % ☑ Fixed rate
                         ☐ Adjustable rate

**4. Does collateral secure the debt?**

☐ No
☑ Yes.   Describe the collateral.   Deed of Trust

Current market value    $    140,000.00   Per Schedules

**5. Does the creditor assert that the debt is nondischargeable?**

☑ No
☐ Yes.   Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

Income and expenses reported on Schedules I and J      Income and expenses stated on the reaffirmation agreement

6a. Combined monthly income from line 12 of Schedule I    $   3,395.83    6e. Monthly income from all sources after payroll deductions    $   3,395.83

6b. Monthly expenses from line 22c of Schedule J    − $   3,351.75    6f. Monthly expenses    − $   3,351.75

6c. Monthly payments on all reaffirmed debts not listed on Schedule J    − $   0.00    6g. Monthly payments on all reaffirmed debts not included in monthly expenses    − $   0.00

6d. Scheduled net monthly income    $   44.08    6h. Present net monthly income    $   44.08
Subtract lines 6b and 6c from 6a.      Subtract lines 6f and 6g from 6e.
If the total is less than 0, put the number in brackets.      If the total is less than 0, put the number in brackets.

| Debtor 1 | Nicole | Anne | Briggs | | Case number (if known) 25-03231 |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

**7.** Are the income amounts on lines 6a and 6e different?

☒ No
☐ Yes. Explain why they are different and complete line 10._____

**8.** Are the expense amounts on lines 6b and 6f different?

☒ No
☐ Yes. Explain why they are different and complete line 10._____

**9.** Is the net monthly income in line 6h less than 0?

☒ No
☐ Yes. A presumption of hardship arises (unless the creditor is a credit union).
Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.
_____

**10.** Debtor's certification about lines 7-9

If any answer on lines 7-9 is Yes, the debtor must sign here.

If all the answers on lines 7-9 are No, go to line 11.

I certify that each explanation on lines 7-9 is true and correct.

✗ _____  Signature of Debtor 1

✗ _____  Signature of Debtor 2 (Spouse Only in a Joint Case)

**11.** Did an attorney represent the debtor in negotiating the reaffirmation agreement?

☐ No
☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?
☐ No
☒ Yes

---

**Part 2:   Sign Here**

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Cover Sheet for Reaffirmation Agreement.

✗ _____  Signature

Date 11/30/2015
MM / DD / YYYY

Brian Germany
Printed Name

Check one:
☐ Debtor or Debtor's Attorney
☒ Creditor or Creditor's Attorney

---

Official Form 427              Cover Sheet for Reaffirmation Agreement              page 2

B2400A (Form 2400A) (12/15)

<table>
<tr><td>

**Check one.**
  ❑ Presumption of Undue Hardship
  ☒ No Presumption of Undue Hardship
*See Debtor's Statement in Support of*
*Reaffirmation, Part II below, to determine*
*which box to check.*

</td></tr>
</table>

# UNITED STATES BANKRUPTCY COURT

### Southern  District of  Mississippi

In re Nicole Anne Briggs_____ ,
      *Debtor*

Case No.  25-03231_____

Chapter  7_____

## REAFFIRMATION DOCUMENTS

**Name of Creditor:**  Trustmark National Bank_____

  ❑ Check this box if Creditor is a Credit Union

## I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision.  Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this Reaffirmation Documents packet.**

1. Brief description of the original agreement being reaffirmed: Mortgage Loan_____

                                                  *For example, auto loan*

2. ***AMOUNT REAFFIRMED***:    $ 59,818.02_____    Principal Balance

       The Amount Reaffirmed is the entire amount that you are agreeing to pay.  This may include unpaid principal, interest, and fees and costs (if any) arising on or before the date you sign this Reaffirmation Agreement.

       *See the definition of "Amount Reaffirmed" in Part V.C below.*

3. The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is  4.75 ____%.

       *See definition of "Annual Percentage Rate" in Part V.C below.*

       This is a *(check one)*  ☒ Fixed rate        ❑ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

B2400A (Form 2400A) (12/15)                                                    Page 2

4. Reaffirmation Agreement Repayment Terms:

☐ If fixed term, $_____ per month for _____ months starting on_____.

☒ If not fixed term, describe repayment terms: $458.38 (P&I) $897.99 total payments per month
Payment amount subject to change depending on escrow and/or rate changes.

5. Describe the collateral, if any, securing the debt:

Description:              Deed of Trust
Current Market Value                    $  140,000.00    Per Schedules

6. Did the debt that is being reaffirming arise from the purchase of the collateral described above?

☐ Yes        ☒ No

If yes, what was the purchase price for the collateral?    $_____
If no, what was the amount of the original loan?           $ 87,870.00

7. Detail the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $_____ | $_____ |
| Annual Percentage Rate | _____% | _____% |
| Monthly Payment | $_____ | $_____ |

8. ☐  Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement.  Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit: _____
_____

## II.  DEBTOR'S STATEMENT IN SUPPORT
## OF REAFFIRMATION AGREEMENT

1. Were you represented by an attorney during the course of negotiating this agreement?

Check one.     ☒ Yes        ☐ No

2. Is the creditor a credit union?

Check one.     ☐ Yes        ☒ No

3. If your answer to EITHER question 1. or 2. above is "No" complete a. and b. below.

   a.. My present monthly income and expenses are:

      i. Monthly income from all sources after payroll deductions
(take-home pay plus any other income)                     $   3,395.83

      ii. Monthly expenses (including all reaffirmed debts except
this one)                                   $   2,453.76

      iii. Amount available to pay this reaffirmed debt (subtract ii. from i.)   $   942.07

      iv. Amount of monthly payment required for this reaffirmed debt   $   897.99

*If the monthly payment on this reaffirmed debt (line iv.) is greater than the amount you have
available to pay this reaffirmed debt (line iii.), you must check the box at the top of page one that
says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page
one that says "No Presumption of Undue Hardship."*

   b. I believe this reaffirmation agreement will not impose an undue hardship on my dependents
or on me because:

      Check one of the two statements below, if applicable:

      ☒ I can afford to make the payments on the reaffirmed debt because my monthly income
is greater than my monthly expenses even after I include in my expenses the monthly
payments on all debts I am reaffirming, including this one.

      ☐ I can afford to make the payments on the reaffirmed debt even though my monthly
income is less than my monthly expenses after I include in my expenses the monthly
payments on all debts I am reaffirming, including this one, because: _____

_____

      Use an additional page if needed for a full explanation.

4. If your answers to BOTH questions 1. and 2. above were "Yes," check the following
statement, if applicable:

      ☐ I believe this reaffirmation agreement is in my financial interest and I can afford to
make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

B2400A (Form 2400A) (12/15)                                          Page 4

## III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I (We) hereby certify that:

    i. I (We) agree to reaffirm the debt described above.

    ii. Before signing this reaffirmation agreement, I (we) read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

    iii. The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

    iv. I am (We are) entering into this agreement voluntarily and fully informed of my (our) rights and responsibilities; and

    v. I (We) have received a copy of this completed and signed Reaffirmation Documents packet.

SIGNATURE(S):

Date 01/28/26     Signature _____
                                             *Debtor*

Date _____     Signature _____
                                      *Joint Debtor, if any*

               If a joint reaffirmation agreement, both debtors must sign.

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor  Trustmark Bank           P O Box 522, Jackson, MS 39205
        *Print Name*                     *Address*

       Brian Germany
  *Print Name of Representative*        *Signature*         *Date*

## IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

❏ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 1/23/26   Signature of Debtor's Attorney _____

             Print Name of Debtor's Attorney   Thomas Carl Rollins, Jr

## V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, detailed in Part B below, are not completed, the reaffirmation agreement is not effective, even though you have signed it.

### A.      DISCLOSURE STATEMENT

1.   **What are your obligations if you reaffirm a debt?**  A reaffirmed debt remains your personal legal obligation.  Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages.  Your obligations will be determined by the reaffirmation agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2.   **Are you required to enter into a reaffirmation agreement by any law?**  No, you are not required to reaffirm a debt by any law.  Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3.   **What if your creditor has a security interest or lien?**  Your bankruptcy discharge does not eliminate any lien on your property.  A ''lien'' is often referred to as a security interest, deed of trust, mortgage, or security deed.  The property subject to a lien is often referred to as collateral.  Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt.  If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt.  To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4.   **How soon do you need to enter into and file a reaffirmation agreement?**  If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge.  After you have entered into a reaffirmation agreement and all parts of this Reaffirmation Documents packet requiring signature have been signed, either you or the creditor should file it as soon as possible.  The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required.

5.   **Can you cancel the agreement?**  You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later.  To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

B2400A (Form 2400A) (12/15)                                                    Page 6

6. **When will this reaffirmation agreement be effective?**

    a. **If you *were represented* by an attorney during the negotiation of your reaffirmation agreement**

        i. **if the creditor is not a Credit Union,** your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship in which case the agreement becomes effective only after the court approves it;

        ii. **if the creditor is a Credit Union,** your reaffirmation agreement becomes effective when it is filed with the court.

    b. **If you *were not represented* by an attorney during the negotiation of your reaffirmation agreement,** the reaffirmation agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing, at which time the judge will review your reaffirmation agreement. If the judge decides that the reaffirmation agreement is in your best interest, the agreement will be approved and will become effective. However, if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your reaffirmation agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the reaffirmation agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

**B.   INSTRUCTIONS**

1. Review these Disclosures and carefully consider the decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney section (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement unless your reaffirmation agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form B2400B to do this.

## C.    DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement.  The amount of debt includes any unpaid fees and costs arising on or before the date you sign this agreement that you are agreeing to pay.  Your credit agreement may obligate you to pay additional amounts that arise after the date you sign this agreement.  You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this agreement.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law.  The annual percentage Rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges.  You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv).  It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

**Debtor 1**          Nicole Anne Briggs

**Debtor 2**
(Spouse, if filing)

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF MISSISSIPPI

Case number
(If known)

Check if this is:
☐ An amended filing
☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

## Official Form 106I
## Schedule I: Your Income                                              12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| **Employment status** | | ☐ Employed<br>☑ Not employed | ☐ Employed<br>☐ Not employed |
| **Occupation** | | | |
| **Employer's name** | | | |
| **Employer's address** | | | |
| **How long employed there?** | | | |

### Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $          0.00 | $          N/A |
| 3. | Estimate and list monthly overtime pay. | 3. | +$          0.00 | +$          N/A |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. | $          0.00 | $          N/A |

Debtor 1   **Nicole Anne Briggs**                                                      Case number *(if known)*

|  |  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | Copy line 4 here | 4. | $ 0.00 | $ N/A |
| 5. | **List all payroll deductions:** | | | |
| 5a. | Tax, Medicare, and Social Security deductions | 5a. | $ 0.00 | $ N/A |
| 5b. | Mandatory contributions for retirement plans | 5b. | $ 0.00 | $ N/A |
| 5c. | Voluntary contributions for retirement plans | 5c. | $ 0.00 | $ N/A |
| 5d. | Required repayments of retirement fund loans | 5d. | $ 0.00 | $ N/A |
| 5e. | Insurance | 5e. | $ 0.00 | $ N/A |
| 5f. | Domestic support obligations | 5f. | $ 0.00 | $ N/A |
| 5g. | Union dues | 5g. | $ 0.00 | $ N/A |
| 5h. | Other deductions. Specify: | 5h.+ | $ 0.00 + $ | N/A |
| 6. | **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ 0.00 | $ N/A |
| 7. | **Calculate total monthly take-home pay.** Subtract line 6 from line 4. | 7. | $ 0.00 | $ N/A |
| 8. | **List all other income regularly received:** | | | |
| 8a. | Net income from rental property and from operating a business, profession, or farm Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 0.00 | $ N/A |
| 8b. | Interest and dividends | 8b. | $ 0.00 | $ N/A |
| 8c. | Family support payments that you, a non-filing spouse, or a dependent regularly receive Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ N/A |
| 8d. | Unemployment compensation | 8d. | $ 0.00 | $ N/A |
| 8e. | Social Security | 8e. | $ 0.00 | $ N/A |
| 8f. | Other government assistance that you regularly receive Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: | 8f. | $ 0.00 | $ N/A |
| 8g. | Pension or retirement income | 8g. | $ 0.00 | $ N/A |
| 8h. | Other monthly income. Specify:   **IRA Distribution** | 8h.+ | $ 3,395.83 + $ | N/A |
| 9. | **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | 9. | $ 3,395.83 | $ N/A |

10. **Calculate monthly income.** Add line 7 + line 9.      10.  $ 3,395.83 + $  N/A = $  3,395.83
    Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. **State all other regular contributions to the expenses that you list in *Schedule J.***
    Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and
    other friends or relatives.
    Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
    Specify:                                                                              11.  +$        0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
    Write that amount on the *Summary of Schedules and Statistical Summary of Certain Liabilities* and Related *Data,* if it
    applies                                                                              12.  $        3,395.83

                                                                                         **Combined
                                                                                         monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
    ■ No.
    □ Yes. Explain:

| Debtor 1 | **Nicole Anne Briggs** |
| --- | --- |

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF MISSISSIPPI

Case number
(if known)

**Check if this is:**
☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

MM / DD / YYYY

## Official Form 106J
## Schedule J: Your Expenses                                                                          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### ▉▉▉ Describe Your Household

1. **Is this a joint case?**

   ■ No. Go to line 2.
   ☐ Yes. Does Debtor 2 live in a separate household?

      ☐ No
      ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?**   ■ No

   Do not list Debtor 1 and Debtor 2.

   Do not state the dependents names.

   ☐ Yes. Fill out this information for each dependent.............

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
| --- | --- | --- |
| | | ☐ No  ☐ Yes |
| | | ☐ No  ☐ Yes |
| | | ☐ No  ☐ Yes |
| | | ☐ No  ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**

   ■ No
   ☐ Yes

### ▉▉▉ Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | | | Your expenses |
| --- | --- | --- | --- |
| 4. | The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. $ | 900.00 |
| | If not included in line 4: | | |
| 4a. | Real estate taxes | 4a. $ | 0.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b. $ | 0.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. $ | 0.00 |
| 4d. | Homeowner's association or condominium dues | 4d. $ | 13.75 |
| 5. | Additional mortgage payments for your residence, such as home equity loans | 5. $ | 0.00 |

| Debtor 1 | **Nicole Anne Briggs** | | Case number (if known) | |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| **6.** | **Utilities:** | | | |
| | 6a. | Electricity, heat, natural gas | 6a. $ | 150.00 |
| | 6b. | Water, sewer, garbage collection | 6b. $ | 175.00 |
| | 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | 125.00 |
| | 6d. | Other. Specify:  **HOA Arrears** | 6d. $ | 450.00 |
| **7.** | **Food and housekeeping supplies** | | 7. $ | 542.00 |
| **8.** | **Childcare and children's education costs** | | 8. $ | 0.00 |
| **9.** | **Clothing, laundry, and dry cleaning** | | 9. $ | 93.00 |
| **10.** | **Personal care products and services** | | 10. $ | 50.00 |
| **11.** | **Medical and dental expenses** | | 11. $ | 50.00 |
| **12.** | **Transportation. Include gas, maintenance, bus or train fare.** Do not include car payments. | | 12. $ | 100.00 |
| **13.** | **Entertainment, clubs, recreation, newspapers, magazines, and books** | | 13. $ | 0.00 |
| **14.** | **Charitable contributions and religious donations** | | 14. $ | 0.00 |
| **15.** | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. | Life insurance | 15a. $ | 0.00 |
| | 15b. | Health insurance | 15b. $ | 28.00 |
| | 15c. | Vehicle insurance | 15c. $ | 150.00 |
| | 15d. | Other insurance. Specify: | 15d. $ | 0.00 |
| **16.** | **Taxes. Do not include taxes deducted from your pay or included in lines 4 or 20.** Specify:  **IRS Payment** | | 16. $ | 450.00 |
| **17.** | **Installment or lease payments:** | | | |
| | 17a. | Car payments for Vehicle 1 | 17a. $ | 0.00 |
| | 17b. | Car payments for Vehicle 2 | 17b. $ | 0.00 |
| | 17c. | Other. Specify: | 17c. $ | 0.00 |
| | 17d. | Other. Specify: | 17d. $ | 0.00 |
| **18.** | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | | 18. $ | 0.00 |
| **19.** | **Other payments you make to support others who do not live with you.** Specify: | | 19. $ | 0.00 |
| **20.** | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*** | | | |
| | 20a. | Mortgages on other property | 20a. $ | 0.00 |
| | 20b. | Real estate taxes | 20b. $ | 0.00 |
| | 20c. | Property, homeowner's, or renter's insurance | 20c. $ | 0.00 |
| | 20d. | Maintenance, repair, and upkeep expenses | 20d. $ | 0.00 |
| | 20e. | Homeowner's association or condominium dues | 20e. $ | 0.00 |
| **21.** | **Other: Specify:  Pet Care** | | 21. +$ | 75.00 |
| **22.** | **Calculate your monthly expenses** | | | |
| | 22a. | Add lines 4 through 21. | $ | 3,351.75 |
| | 22b. | Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| | 22c. | Add line 22a and 22b. The result is your monthly expenses. | $ | 3,351.75 |
| **23.** | **Calculate your monthly net income.** | | | |
| | 23a. | Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. $ | 3,395.83 |
| | 23b. | Copy your monthly expenses from line 22c above. | 23b. -$ | 3,351.75 |
| | 23c. | Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | 23c. $ | 44.08 |

**24.** **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.

☐ Yes.    Explain here:

# NOTE

FHA Case No. ███████

**Multistate**

MARCH 31ST, 2011
{Date}

LOAN # ███████

165 MARGARET LANE, FLORENCE, MS 39073
{Property Address}

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means TRUSTMARK NATIONAL BANK

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of EIGHTY SEVEN THOUSAND EIGHT HUNDRED SEVENTY AND NO/100.

Dollars (U.S. $ 87,870.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FOUR AND THREE QUARTERS percent ( 4.750 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on MAY 1ST , 2011 . Any principal and interest remaining on the first day of APRIL 2041 , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at P.O. BOX 22869, JACKSON, MS 39225 or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 458.38 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other [specify]

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

VMP1R (0809).00
Page 1 of 3

10/95

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of         **FOUR**                    percent (         **4.000**             %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note..

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services



10/95
VMP1R (0809).00
Page 2 of 3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
NICOLE ANNE BRIGGS               -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

35-4-1
W2N01

3011   24619
Recorded in the Above
DEED of TRUST  Book & Page
04-07-2011 11:03:52 AM
Larry Swales - Chancery Clerk
Rankin County, MS

Return To:
**TRUSTMARK NATIONAL BANK**
**P.O. BOX 22869**
Prepared By:
**BETTY DUNLAP**
**201 COUNTRY PLACE PKWY SUITE B**
**PEARL, MS 39208**

4072746

Indexing Instructions:   West ½ of the Northeast ¼ of Section 35, Township 4 North, Range 1
East, Rankin County, Mississippi

State of Mississippi

# DEED OF TRUST

FHA Case No. ████████

MIN ████████████████

THIS DEED OF TRUST ("Security Instrument") is made on      **MARCH 31ST, 2011**
The Grantor is   **NICOLE ANNE BRIGGS, A SINGLE WOMAN**
**165 Margaret Lane**
**Florence, MS 39073**
**(601)699-0887**

("Borrower"). The trustee is **T. HARRIS COLLIER, III, 248 E. Capitol** Street, Jackson,
MS  39201  1-800-844-2000
("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc.("MERS"), (solely as nominee for
Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws
of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888)
679-MERS. **TRUSTMARK NATIONAL BANK**
**248 E. Capitol Street**
**Jackson, MS  39201**
**1-800-844-2000**

FHA Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended 2/98
VMP4N(MS) (0812).00
Page 1 of 10

3011   24620
DEED of TRUST  Book & Page

("Lender") is organized and existing under the laws of  **THE UNITED STATES OF AMERICA**      , and has an address of  **P.O. BOX 22869JACKSON, MS 39225**
. Borrower owes Lender the principal sum of
**EIGHTY SEVEN THOUSAND EIGHT HUNDRED SEVENTY AND  NO/100.**
Dollars (U.S. $   **87,870.00**      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on  **APRIL 1ST**
**2041**        . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in                                **RANKIN**                                  County, Mississippi:


### See Exhibit "A" Attached Hereto


Parcel ID Number:   **D4-9-10**
which has the address of                       **165 MARGARET LANE**                             [Street]
                      **FLORENCE**                 [City], Mississippi   **39073**        [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

FHA Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended 2/98
VMP4N(MS) (0812).00
Page 2 of 10

3011 24621
DEED of TRUST Book & Page

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

FHA Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended 2/96
VMP4N(MS) (0812).00
Page 3 of 10

3011   24622
DEED of TRUST  Book & Page

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or

FHA Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended 2/99
VMP4N(MS) (0812).00
Page 4 of 10

3011   24623
DEED of TRUST Book & Page

regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

FHA Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended 2/98
VMP4N(MS) (0812).00
Page 5 of 10

3011  24624
DEED of TRUST  Book & Page

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

FHA Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended 2/98
VMP4N(MS) (0812).00
Page 6 of 10

3011   24625
DEED of TRUST   Book & Page

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in paragraph 13, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at such time and place in RANKIN
County as Trustee designates in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

FHA Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended 2/98
VMP4N(MS) (0812).00
Page 7 of 10

3011   24626
DEED of TRUST   Book & Page

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs.

20. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| ☐ Condominium Rider | ☐ Growing Equity Rider | ☐ Other [specify] |
| ☒ Planned Unit Development Rider | ☐ Graduated Payment Rider | |

FHA Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended 2/08
VMP4N(MS) (0812).00
Page 8 of 10

3011   24627
DEED of TRUST  Book & Page

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                            NICOLE ANNE BRIGGS          -Borrower

_____          _____ (Seal)
                                                                        -Borrower

_____ (Seal)          _____ (Seal)
                 -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                 -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                 -Borrower                                              -Borrower

FHA Deed of Trust with MERS-MS                          FHA 4/96 Amended 2/98
VMP ®                                                   VMP4N(MS) (0812).00
Wolters Kluwer Financial Services                       Page 9 of 10

3011 24628
DEED of TRUST Book & Page

**STATE OF MISSISSIPPI,**        County ss: **Madison**

On this **31ST** day of **MARCH** , **2011** , personally appeared before me, the undersigned authority in and for said County and State, the within named NICOLE ANNE BRIGGS

, who acknowledged that he/she/they signed and delivered the foregoing instrument on the day and year therein mentioned.

Given under my hand and seal of office.

My Commission Expires:

(Seal)

Notary Public

**STATE OF MISSISSIPPI**
**NOTARY PUBLIC**
ID # 24922
**REGINA D. BROOKS**
Commission Expires
Sept. 2, 2013
**MADISON COUNTY**

FHA Deed of Trust with MERS-MS
VMP ®
Wolters Kluwer Financial Services

FHA 4/96 Amended 2/98
VMP4N(MS) (0812).00
Page 10 of 10

3011   24629
DEED of TRUST  Book & Page

## Exhibit "A"

A certain parcel of land lying and being situated in the West ½ of the Northeast ¼ of Section 35, Township 4 North, Range 1 East, Rankin County, Mississippi and being more particularly described by metes and bounds, to-wit:

Commencing at the Southwest corner of the Northwest Quarter of the Northeast Quarter of said Section 35, Township 4 North, Range 1 East, and run North 108.9 feet, more or less to a stake; thence East 27.0 feet more or less to an iron pin marking the Southwest corner of Lot 7 of Block A of Southern Acres Subdivision Part 1 according to a plat on file in the Office of the Chancery Clerk in Brandon, Rankin County, Mississippi in Plat Book 4 at Page 34; thence North 80 degrees53 minutes West from said found iron pin in line with previously mentioned found iron 20.2 feet to its intersection with the center of an asphalt drive; thence South 02 degrees 11 minutes West along the center of said driveway 163.1 feet; thence South 00 degrees 10 minutes West and continue along the center of said drive 47.6 feet to the end of said asphalt drive and the beginning of a gravel drive; thence South 02 degrees 24 minutes East along the center of said gravel drive 91.4 feet; thence South 01 degree 12 minutes West and continue along the center of said gravel drive 126.6 feet; thence West 7.6 feet to a point on the West line of that property described in Deed Book 437 at Page 340 in the Office of the Chancery Clerk at Brandon, Rankin County, Mississippi and the Point of Beginning of the property herein described; thence East 90.34 feet; thence South 00 degrees 08 minutes West 207.9 feet; thence South 53 degrees 46 minutes West along South line of said Deed Book 437 at Page 340 a distance of 112.2 feet; thence North 00 degrees 08 minutes East along the aforesaid West line of that property described in Deed Book 437 at Page 340 a distance of 274.2 feet to the Point of Beginning and containing 0.50 acres, more or less.

## AND TOGETHER WITH:

A 10 foot ingress/egress easement being more particularly described by metes and bounds to-wit:

A certain easement lying and being situated in the West ½ of the Northeast ¼ of Section 35, Township 4 North, Range 1 East, Rankin County, Mississippi and being more particularly described by metes and bounds, to-wit:

Commencing at the Southwest corner of the Northwest Quarter of the Northeast Quarter of said Section 35, Township 4 North, Range 1 East, and run North 108.9 feet, more or less to a stake; thence East 27.0 feet more or less to an iron pin marking the Southwest corner of Lot 7 of Block A of Southern Acres Subdivision Part 1 according to a plat on file in the Office of the Chancery Clerk in Brandon, Rankin County, Mississippi in Plat Book 4 at Page 34; thence North 80 degrees 53 minutes

3011 24630
DEED of TRUST Book & Page

West from said found iron pin in line with previously mentioned found iron 20.2 feet to its intersection with the center of an asphalt drive said point being the Point of Beginning of the easement described herein; thence the following bearings and distances along the center line of an existing asphalt drive said easement and the center of a 10 foot easement being 5 feet left and 5 feet right of said center line; thence South 02 degrees 11 minutes West along the center of an existing asphalt drive 163.1 feet; thence South 00 degrees 10 minutes West along the center of an asphalt drive 47.6 feet to the beginning of a gravel drive; thence South 02 degrees 24 minutes East along the center of said gravel drive 91.4 feet; thence South 01 degree 12 minutes West and continue along the center of said gravel drive 126.6 feet to the North line of a certain 0.5 acre tract and the point of terminus of said easement.

Signed for Identification:

Nicole Anne Briggs

L:\SSG\5291-2 Estate of Bobbye K. Morgan\Sale of Real Estate - Closing Docs\Legal Desc.wpd

3011  24631
DEED of TRUST Book & Page

# PLANNED UNIT DEVELOPMENT RIDER


FHA Case No

THIS PLANNED UNIT DEVELOPMENT RIDER is made this          31ST          day of
MARCH 2011          , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the
same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
TRUSTMARK NATIONAL BANK

("Lender") of the same date and covering the Property described in the Security Instrument
and located at:

165 MARGARET LANE
FLORENCE, MS  39073
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as
SOUTHERN ACRES SUBDIVISION, PART1
DECLARATION OF COVENANTS, CONDITIONS, AND RESTRICTIONS OF
[Name of Planned Unit Development]

PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common
areas and facilities), acting as trustee for the homeowners, maintains, with a
generally accepted insurance carrier, a "master" or "blanket" policy insuring the
Property located in the PUD, including all improvements now existing or
hereafter erected on the mortgaged premises, and such policy is satisfactory to
Lender and provides insurance coverage in the amounts, for the periods, and
against the hazards Lender requires, including fire and other hazards included
within the term "extended coverage," and loss by flood, to the extent required
by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this
Security Instrument for the monthly payment to Lender of one-twelfth of the

---

FHA PUD Rider                                        VMP589U (0806 ).00
VMP®                                                        Page 1 of 3
Wolters Kluwer Financial Services © 2008          Initials: _NDB_

yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

FHA PUD Rider
VMP®
Wolters Kluwer Financial Services © 2008

VMP589U (0806).00
Page 2 of 3
Initials: _____



Book:3026 Page:190-191
DEED of TRUST
RCD: 1/5/2026 @ 8:05:48 AM
Rankin County, MS
Mark S. Scarborough, Chancery Clerk

**Prepared by / Return to:**
Renfroe & Perilloux, PLLC, 648 Lakeland East Dr., Ste A, Flowood, MS 39232; Phone: 601-932-1011; MS Bar No. 10096; File #25-35523 /kr

**Grantor:**
MERS, Inc., P.O. Box 2026, Flint, MI 48501-2026 and 1901 E. Voorhees St., Suite C, Danville, IL 61834; Phone 1-888-679-6377

**Grantee:**
Trustmark Bank, Mortgage Real Estate Dept., The Day Centre, 201 Country Place Parkway, Pearl, MS 39208-6689; Phone: 601-208-5933

**Indexing Instruction & Legal Description:**
Situated in Rankin County, MS, to-wit:
W ½ NE 1/4, Sec. 35, T4N, R1E

---

Lenders Loan Number: ***2746
MIN:                    5; MERS Phone 1-888-679-6377

## ASSIGNMENT OF MORTGAGE / DEED OF TRUST

FOR VALUE RECEIVED Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Trustmark National Bank, its successors and assigns, hereby assign and transfer to Trustmark Bank its successors and assigns, all its right, title and interest in and to a certain mortgage executed by Nicole Anne Briggs, and bearing the date of the 31 day of March, 2011, and recorded on the 7 day of April 2011 in the office of the Chancery Clerk of Rankin County, State of Mississippi in Book 3011 at Page 24619.

WITNESS my signature this on the date notarized herein:

Mortgage Electronic Registration Systems, Inc. (MERS)

BY: *Rhonda Whatley*

*Rhonda Whatley*, Assistant Secretary of MERS

Book 3026 Page 191
DEED of TRUST 1/5/2026 8:05:48 AM

STATE OF MISSISSIPPI
COUNTY OF RANKIN

On the 24 day of Dec 20 25 , before me a Notary Public, personally
appeared, Rhonda Whatley, to me known, who being duly sworn did say that he / she is
Assistant Secretary of Mortgage Electronic Registration Systems, Inc., and that said instrument was
executed on behalf of said corporation.

Deborah Clark
NOTARY PUBLIC

My Commission Expires:
3-26-29

Address of Preparer:
Renfroe & Perilloux, PLLC
648 Lakeland East Drive, Suite A
Flowood, MS 39232

STATE OF MISSISSIPPI
DEBORAH CLARK
NOTARY PUBLIC
ID No. 92593
MY COMMISSION EXPIRES
MARCH 26, 2029
RANKIN COUNTY

RANKIN COUNTY, MS MARK S. SCARBOROUGH, CHANCERY CLERK
I CERTIFY THIS INSTRUMENT WAS FILED ON 1/5/2026 8:05:48 AM AND RECORDED IN DEED of TRUST 3026 190